**Application of Warren R. ATTWOOD.**

**Patent Appeal No. 7367.**

United States Court of Customs and Patent Appeals.

April 15, 1965.

———◆———

Robert C. Hauke, Southfield, Mich., Byron B. Collings, Washington, D. C., for appellant.

Clarence W. Moore, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

RICH, Judge.

This appeal is from the decision of the Board of Appeals affirming the examiner's rejection of claims 10–21 in patent application serial No. 669,027, filed July 1, 1957, for "Means for Locking Slotted Members."

Claim 10 is the only independent claim and reads:

"10. A device for locking a metal structural member relative to a screw or bolt fastening means projecting through an opening in the member, comprising an element of metal *harder* than said member and arranged to *closely surround* said fastening means, *sharpened elongated straight teeth* on at least one face for presentation to the surface of the member so as to be forced straight into the surface when the fastening means is tightened, said teeth being of *symmetrical cross section* and *spaced apart* on the face of said element in said member, said element having *planar surfaces* intermediate said teeth for bearing on the surface of said member." [Emphasis ours.]

The italicized words represent features relied on by appellant in contending that his locking device is patentable.

The invention is a form of washer, or the under surface of a bolt head, adapted to bear against a metal member such as a strut or a bracket to be fastened to another member by one or more bolts, provided with straight sharp teeth adapted to bite into the softer metal of the structural members. The use of such bolts or washers is desirable in those cases where the openings through which the bolts pass are larger than the bolts as, for example, where it is a circular hole of greater diameter than the bolt or where a bolt passes through an elongated slot. There is the possibility in these cases, unless something is done to prevent it, that after the bolts are tight-

ened stress may cause the bolt to slip in the larger opening and destroy the adjustment of the structure. By providing sharp gripping teeth on one or both faces of a washer which itself closely surrounds the bolt, or equivalent teeth on a bolt head, such slippage is prevented.

All claims are rejected as failing to define anything unobvious in view of the disclosures of the prior art as shown by the following three patents:

| Hale | 1,279,686 | Sept. | 24, 1918 |
| Hosking | 2,179,575 | Nov. | 14, 1939 |
| Swiss Patent | 101,329 | Sept. | 17, 1923 |

Hale shows a washer to fit closely on a bolt to fix its position in a slot in a metal member, the washer being aptly described in the single claim of the patent as follows:

"As an article of manufacture, a washer having a knurled edge, the knurling projecting laterally beyond a face of the washer so as to form a series of relatively small biting burs."

The specification states and the drawing shows that the burrs may extend on both sides of the washer if desired. The face of the washer lying inside of the circumferential ring of burrs is planar. Clearly the purpose served is the same as that disclosed by appellant for his invention.

Hosking discloses a variety of spring steel lock washers for the usual purpose of securing nuts against shaking loose. Appellant insists that his device "is distinguished from the usual 'lock washer' type of device commonly used to prevent a nut or bolt, once tightened, from backing off and becoming loose," notwithstanding the function of his washers is to *lock* bolts against shifting in holes. We can concede the distinction. The Patent Office cites Hosking only for its showing of planar surfaces between teeth and radially arranged teeth.

The Swiss patent describes and illustrates a washer having concentric circular V-shaped grooves on its opposite faces. The boundaries of the grooves coincide so that in effect there are also V-shaped circular teeth or ridges. The patent refers to these washers as connecting washers intended to prevent any slippage that might cause dislocation of an assemblage and shows how they are used. It also points out that the bolt holes in the parts of the assemblage may be enlarged or have oval or elongated holes to permit adjustment of the parts. The translation says, "The washers being grooved and tempered, creates a gripping on the faces of contact and any slippage or any dislocation of the elements in this way assembled is excluded."

While the circumferential teeth are the only form illustrated in the Swiss patent, the specification concludes with the following paragraph:

"The washers in Figs. 1 and 2, instead of having concentric grooves, could have helicoidal grooves. The grooves could be constituted of grooves parallel to one of the diameters or could have a radial direction, or could be constituted by a combination of these different forms of execution, providing that it presents surfaces of gripping contacts, which offers to the connection the greatest adherence with the assemblage elements."

Appellant argues strenuously that the substitution of radial *grooves* would not result in radial *teeth* like his but segmental flat portions which would not grip. The board's view was:

"It is obvious that wide flat faces on the outermost portion of the washer would not be effective. The only fair interpretation which should be given to the Swiss patent, *in order to provide the utility set forth therein,* would be that the Swiss patent teaches or *suggests* the use of means in the form of *teeth* between the grooves which *teeth* would be in the outermost portion and be sufficiently sharp to provide an effective gripping action." [Emphasis ours.]

We agree with the board at least to the extent that such would be the *suggestion* to one of ordinary skill in the art. We

have considered all of appellant's arguments but are unable to find any reason to disagree with the conclusion of the board that the claims do not define any unobvious variations from the prior art.

The decision of the board is affirmed.

Affirmed.